**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ANGELA HENDERSON WILLIAMSON, on behalf of herself and all others similarly situated, | ) ) ) |
| | ) Case No. _____ |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| TRAVELPORT, LP, & GALILEO & WORLDSPAN U.S. LEGACY PENSION PLAN, | ) ) ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW Plaintiff Angela Henderson  Williamson ("Plaintiff"), on behalf of herself and all others similarly situated, and hereby files her Complaint against Defendants Travelport, LP ("Travelport") and Galileo & Worldspan U.S. Legacy Pension Plan (the "Legacy Plan" or the "Plan"), (collectively "Defendants"), respectfully showing the Court as follows:

This ERISA pension case is necessary primarily because Defendants have taken positions that are contrary to the governing Plan documents, and further have decided to burden pensioners with maintaining/storing/producing decades' worth of time records and pay documents, rather than having the Plan's administrator/ recordkeepers/fiduciaries keep those records in the regular course of business.

1

1.

Plaintiff brings this action pursuant to The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, via *inter alia*, 29 U.S.C. § 1132, to receive benefits under an employee pension benefit plan sponsored and maintained by Travelport, LP.   Plaintiff also seeks a declaratory judgment that her pension benefits were wrongfully calculated under the terms of the Plan.   Upon information and belief, other pensioners' benefits are also being wrongfully calculated under the Plan and such pensioners are the victims of a breach of fiduciary duties; Plaintiff seeks relief on behalf of herself and all others similarly situated.   Plaintiff also seeks civil document penalties for Defendants' failure and/or delay in producing documents required by ERISA, 29 U.S.C. § 1132(c). Plaintiff finally seeks to recover her attorneys' fees and costs of bringing this action pursuant to 29 U.S.C. § 1132(g).

## **PARTIES**

2.

Plaintiff Angela Henderson Williamson is currently a resident of Atlanta, DeKalb County, Georgia.

3.

Travelport is a company organized under the laws of the State of Delaware

with its principal place of business in Atlanta, Georgia. Travelport is registered to do business in the State of Georgia, and may be served with process at Travelport, LP, 300 Galleria Parkway NW, Atlanta, GA 30339.

4.

Galileo & WorldSpan U.S. Legacy Pension Plan is an ERISA-governed employee pension plan sponsored by Travelport, LP, and administered by Travelport in Atlanta, Georgia. The Plan may be served with process at Travelport, LP, 300 Interpace Parkway, Building C, Parsippany, NJ 07054.

## JURISDICTION AND VENUE

5.

This Court has jurisdiction over this action pursuant to 29 U.S.C. §§ 1132, 1104 and 28 U.S.C. § 1331.

6.

Venue is proper pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2) because the breach took place here, and Defendants may be found in this District.

## GENERAL FACTS REGARDING PLAINTIFF'S EMPLOYMENT AND PENSION PLAN PARTICIPATION

7.

Plaintiff is a former employee of United Air Lines, Inc. ("UAL") and its various successors, which through the years and various corporate transactions has

3

changed from UAL, eventually to present-day Travelport, LP ("Employer").

8.

Plaintiff is a participant of the pension Legacy Plan sponsored and administered by Employer.  A true and correct copy of the Legacy Plan is attached hereto as Exhibit 1.  The Plan qualifies as an employee pension benefit plan under ERISA, as defined by 29 U.S.C. § 1002(2).

9.

Section 6.02 of the Legacy Plan provides the following pension benefit formula for determining the amount of a Participant's retirement benefits: the "Participant's Monthly Normal Benefit _shall_ be determined as follows: 1.6% of his Final Average Compensation MULTIPLIED BY: Months of Benefit Service / [DIVIDED BY] 12."  (Exh. 1, p. 22.)

10.

Travelport is the Plan Sponsor of the Plan and the Plan Administrator.   Day to day duties regarding the Plan are delegated to the Employee Benefits Committee located in Atlanta, Georgia.

11.

As a former employee of Travelport and its predecessors, Plaintiff was a Participant in certain predecessor pension plans to the Legacy Plan, specifically

pension plans of UAL, Covia and the successor Galileo plans, established for certain non-union employees.

12.

Plaintiff became employed by United Air Lines, Inc. ("UAL") as a stewardess on or about September 4, 1968, then, in the summer of 1969 was employed as a ticket reservation agent and later as a technical support agent, and was continuously employed by UAL thereafter until on or about June 30, 1988. As such, she was a Participant in the United Air Lines, Inc. Non-Union Ground Employees' Retirement Plan (the "UAL Plan"), a true and correct copy of which is attached hereto as Exhibit 2.

13.

On or about July 1, 1988, upon information and belief, UAL entered into an agreement with Galileo International Partnership, of which Covia Corporation was the general partner, pursuant to which certain UAL employees, Plaintiff among them, were transferred to the employ of Covia. Plaintiff was continuously employed by Covia until on or about December 31, 1992.

14.

Upon being employed by Covia, Plaintiff immediately became a Participant in the Covia Pension Plan or the Covia Mirror Pension Plan, a true and correct

copy of which is attached hereto as Exhibit 3.

15.

On or about January 1, 1993, Plaintiff's employment was transferred to Apollo Travel Services Partners, which upon information and belief was a successor by mergers and name changes to Covia.  As such, Plaintiff became immediately covered as a Participant in the Galileo International Employees Pension Plan, amended and restated effective January 1, 1993, a true and correct copy of which is attached hereto as Exhibit 4.  A true and correct copy of the new Galileo International Employees Pension Plan Summary Plan Description ("SPD"), effective September 16, 1993, is attached hereto as Exhibit 5.

16.

Such plan was later amended and restated as the Galileo International Employees Pension Plan, effective January 1, 1997, and again effective January 1, 2008 as the Galileo & WorldSpan U.S.  Legacy Pension Plan (previously marked Exhibit 1 and titled herein as the "Legacy Plan" or the "Plan") which, with amendments, still exists today as the operative Plan.

17.

A true and correct copy of the Legacy Plan's SPD effective December 31, 2009, is attached hereto as Exhibit 6.

18.

On February 17, 2012, Travelport's in-house lawyer, Douglas Neu ("Neu"),
supplied Exhibit 1 (the Legacy Plan) to Plaintiff's counsel, representing that
Exhibit 1 was the current plan document governing her pension benefits.  For that
reason, he refused to supply any plan documents for any predecessor plans.

19.

Sections 1.02 and 2.15 of the Legacy Plan, Exh.  1, pp. 1-2, 7, set forth a
complicated history of the various Covia/Apollo/Galileo entities and related
entities.

20.

Effective April 11, 2008, Galileo International, LLC, was renamed
Travelport International, LLC; effective January 1, 2010, Travelport International,
LLC merged into its parent, Travelport, LP, and Travelport, LP assumed
sponsorship and administration of the Plan.

21.

Plaintiff's employment with Apollo ended on May 6, 1997.   In total, she
worked for the UAL/Covia/Apollo entities for approximately 28 ½ years.   She was
and is vested in her pension Plan benefits, which Defendants do not dispute.

22.

In 1999, Plaintiff inquired of the Plan Sponsor at that time as to the possibility of commencing receipt of her pension benefits under the Plan prior to her Normal Retirement Date of December 1, 2011.

23.

In response, Plaintiff received from Galileo International the letter dated October 15, 1999, with attached Administrative Worksheet, a true and correct copy of which is attached hereto Exhibit 7, (hereinafter the "Early Retirement Letter" or "ERL").

24.

Ultimately, Plaintiff decided not to pursue early retirement and thus did not make a claim for pension benefits under the Plan in 1999.

25.

In 2011, as her Normal Retirement Date of December 1, 2011 approached, Plaintiff once again initiated contact with the Plan Sponsor (then Travelport, LP) concerning making a claim for pension benefits under the Plan.

26.

Starting in mid-2011, Plaintiff talked to several individuals concerning how to apply for her pension benefits under the Plan.   In December 2011 and in January of 2012, she talked to Russell Ferrante ("Ferrante") of Travelport in

Atlanta, and to Don Johnson of the Travelport Retirement Benefit Services Center ("TRSBC") in Cincinnati.   Ferrante supplied to Plaintiff an incomplete copy of the ERL, which was missing the "Administrative Worksheet."

_____

**DISPUTE REGARDING FINAL AVERAGE COMPENSATION**

27.

The Legacy Plan defines "Final Average Compensation" as:  "The highest monthly average of a Participant's Compensation attributable to the sixty (60) consecutive Months of Service occurring during the last one-hundred twenty (120) Months of Service of employment with the Employer; … ."  (Exh. 1, Section 2.27, p. 9.)  "Compensation" is defined in Section 2.14 of the Plan.  (*Id.*, pp. 6-7.)

28.

On or about January 24, 2012, Plaintiff and her lawyer, Douglas N. Campbell, Esq.  ("Campbell"), commenced discussions with Ferrante and Neu, concerning, *inter alia*, the amount of Plaintiff's alleged monthly plan benefits as then calculated by Travelport, specifically with regard to the Final Average Compensation component of the pension calculation.

29.

The discussions continued into February 2012, and further resulted in receipt

by Plaintiff and Campbell from Ferrante of a February 9, 2012 fax to which was attached only the first two pages of the October 15, 1999 ERL letter (Exh. 8), but without the originally-attached Administrative Worksheet.

30.

Dissatisfied with Travelport's responses to their inquiries, Plaintiff and Campbell had an extensive discussion with Ferrante and Neu on February 10, 2012, concerning the amount of Plaintiff's alleged monthly plan benefits as then calculated by Travelport.

31.

In that conversation, Campbell requested, among other things, the plan documents containing the formulas referred to in the October 1999 ERL letter, historical documents relating to the plan and any changes made to the plans or the formulas over the years, documents relating to the corporate history and documents relating to the calculation of the amount of the benefit, and Plaintiff's attendance records during her employment.

32.

At the conclusion of the February 10, 2012, conversation, the Travelport representatives promised to produce the requested documents. A true and correct copy of Campbell's notes from that conversation is attached hereto as Exhibit 9.

10

33.

By email on February 17, 2012, a true and correct copy of which is attached

hereto as Exhibit 10, Neu provided as attachments a copy of the current Legacy

Plan (Exh. 1), the then-current SPD for the Legacy Plan (Exh. 6), and a 1994 draft

of the SPD for the 1993 predecessor Galileo International plan (Exh. 5).  He also

provided in narrative form some additional information.

34.

With reference to the alleged amount of Plaintiff's monthly pension benefits

as then calculated by Travelport, Neu simply referred again to the October 15,

1999 ERL letter, but provided no documents or other backup regarding the

underlying figures used to calculate it (specifically, the Final Average

Compensation).

35.

On April 12, 2012, Campbell again discussed with Neu the subject of the

alleged amount of Plaintiff's monthly pension benefits as then calculated by

Travelport, and Neu again promised to send to Campbell documents that would

show the amount was correct.

36.

Neu, in an email dated April 18, 2012, a true and correct copy of which is

attached hereto as Exhibit 11, again attached a copy of the October 15, 1999 ERL

letter, this time with the Administrative Worksheet and the benefit calculation

contained therein (the computational formula in which was supposed to be drawn

from the Legacy Plan, Exh. 1, Section 6.02 and related Definitions, *inter alia,* at

Sections 2.14, 2.27 & 2.34).  Neu suggested that "we have a call" to "go through

the calculations."  (*Id.*)

37.

After some rescheduling, that call between Campbell and Neu was

scheduled to take place on May 11, 2012 at 2:30 EST, but by email of 6:19 a.m.

on that date, a true and correct copy of which is attached hereto as Exhibit 12, Neu

said he could not participate, but that Ferrante would call Campbell instead.

38.

On May 11, 2012, at about 3:10 p.m., EST, Ferrante called Campbell, saying

that Neu could not make the call and that he (Ferrante) would discuss the issues

Neu and Campbell had agreed to discuss.

39.

During that telephone conference, Ferrante said that he: (a) neither had nor

knew anything about any documents relating to the correctness of the salary

figures used to calculate the amount of Plaintiff's pension benefits; (b) neither had

12

information nor knew anything about the provisions and formulas in the

predecessor plans or about Plaintiff's benefits under the Plan; but (c) did provide

some verbal information regarding the impact of the benefit period versus the

vesting period calculations, but was unable to furnish specifics or documents

because he said he had been unaware of Neu's promise to produce documents and

information supporting all of these matters. The result of this conversation was

that Ferrante was to talk to Neu and that one of them was to call Campbell back.

40.

That promised call from Neu or Ferrante to "go through the calculations"

has never occurred to and including the date of this Complaint, despite numerous

attempts on Plaintiff's part to bring that about, nor were any additional documents

or materials produced until much later, which resulted in Campbell's sending to

Neu an email, dated August 21, 2012, a true and correct copy of which is attached

hereto as Exhibit 13, which he received.

41.

The August 21, 2012 email gave Neu until 5:00 p.m. on August 28, 2012 to

produce all of the materials that he previously had promised to produce. (*Id.*)

42.

By letter dated August 27, 2012, a true and correct copy of which is attached

hereto as Exhibit 14, Neu responded at some length.  This letter provided a

computer printout containing some additional "Pensionable Earnings History" for

Plaintiff, but without any backup documentation, and some computer numbers

concerning "Total Benefit Service," also without any backup documentation, in

addition to a copy of a November 15, 1990, letter to Plaintiff from UAL, allegedly

regarding the amount of pension benefits she had accrued while a UAL employee.

43.

Among other things, Defendant refused to provide backup for the

"Earnings" figures it lists on page 3 of the Worksheet in the Section entitled

"Calculation of Final Average Earnings."  Due to Travelport's failure to provide

backup for these alleged numbers, Plaintiff was unable to substantiate from where

those numbers had originated.  As it turns out, the "Earnings" numbers on the sheet

were dead wrong.

44.

Notwithstanding the numbers' incorrectness and Neu's several previous

promises to supply to Plaintiff with the documentation she had requested, after

seven (7) months of negotiations and requests for those documents and his

promises to provide them and the other requested information, Neu's August 27,

2012 letter (Exh. 14) simply refused to do so: "*To be clear, we are not going to*

14

*provide you with Ms. Williamson's work and salary records or the archeological*

*records of the previous transitions and iterations of the plans that precede the ones*

*we have already provided. ... Vague 'suspicions' about errors certainly are not*

*enough to justify that task.*" (*Id.*, p. 2.)

45.

Travelport took the position that it, as Plan Sponsor, Plan Administrator and

an ERISA fiduciary, had no duty whatsoever, upon request or otherwise, to provide

backup or verification for the amount of pension benefits it claims are due to a Plan

Participant, and notwithstanding, *inter alia*, specific Plan provisions to the

contrary. (*See, e.g.,* Section 17.)

46.

On August 28, 2012, TRSBC sent Plaintiff another Pension Modeling

Statement that was essentially identical to the January 25, 2012, one, except for the

date on the cover letter. A true and correct copy of this letter is attached hereto as

Exhibit 15.

47.

Plaintiff's counsel responded by email and letter dated October 9, 2012, a

true and correct copy of which is attached hereto as Exhibit 16, and which Neu

received. This letter expressed dissatisfaction with Travelport's position but, in an

attempt to resolve the dispute, submitted, *inter alia*, a detailed four-part written request for the documents Plaintiff needed in order to verify the calculation of the Final Average Compensation component of the benefit. (*Id.*, pp. 2-3.)

48.

Neu responded by letter dated October 22, 2012, which was attached to his email of the same date, a true and correct copy of which is attached hereto as Exhibit 17, but did not provide a substantive response.

49.

Plaintiff did not at that time submit a formal claim for her retirement benefits because she had not been provided sufficient information upon which to base a rational decision as to the amount of her pension benefits claim.

50.

 On January 23, 2014, Plaintiff submitted an extensive written letter directly to TRSBC requesting again the Employer's underlying documents used to justify Travelport's alleged calculation of Plaintiff's "Final Average Compensation" for use in the Legacy Plan's benefits formula.  A true and correct copy of such letter is attached hereto as Exhibit 18, which TRSBC received.

51.

Jennifer Lansing-McGrath ("Lansing-McGrath") responded to that letter on

16

March 3, 2014, reiterating Travelport's position that it had no obligation to give

Plaintiff any earnings history, but suggesting that Plaintiff's W-2 forms for the

relevant period would suffice.  A true and correct copy of her March 3, 2014, letter

is attached hereto as Exhibit 19.  Plaintiff's W-2s would of course have been

generated in the first instance by the Employer (and its predecessors) and therefore

the burden should be on the Employer to keep them, if/when needed, in order to

administer the Legacy Plan.

52.

Because Plaintiff's husband is an accountant, he was able to find her W-2s

and by letter of May 20, 2014, a true and correct copy of which is attached hereto

as Exhibit 20, Plaintiff responded to Lansing-McGrath's March 3, 2014, letter and

enclosed the requested W-2s.  These proved conclusively that not a single one of

the annual compensation figures contained in the bogus computer "printout" Neu

had provided with his letter to Campbell of August 27, 2012 (*see* Exh. 14), was

even close to correct.

53.

Moreover, this blatant falsity had also resulted in Travelport having chosen

the wrong highest five consecutive years out of the last ten years of Plaintiff's

employment for use in the pension formula for Final Average Compensation.

17

Neu's "printout" showed that period to be 1992-1996, whereas the correct period is 1990-1994, resulting in the understatement of the correct figure by the difference between $82,111 (the correct number) and $77,973.57 (the wrong number).

54.

Confronted with the blatant falsity of the Employer's numbers, Lansing-McGrath by letter dated June 2, 2014, a true and correct copy of which is attached hereto as Exhibit 21, finally tacitly admitted the falsity and "updated [Plaintiff's] earnings" and her Final Average Compensation, essentially agreeing with the Final Average Compensation Plaintiff had given Travelport via the January 23, 2014, letter.  Correction of this blatant falsity in Travelport's "Final Average Compensation" numbers for Plaintiff took approximately 2 ½ years, and in the end, was only remedied because Plaintiff found and produced her own W-2s going back *decades* because the Employer and the Committee failed and/or refused to keep appropriate records of her earnings.

55.

Lansing-McGrath's June 2, 2014, letter contained not a single word of apology for the gross falsity in Travelport's proven-incorrect Final Average Compensation calculations and alleged supporting documents.

_____

## DISPUTE REGARDING MONTHS OF BENEFIT SERVICE

56.

Exhibit 21, the June 2, 2014, letter, also mischaracterized the items included in Travelport's "new" calculation Plaintiff's alleged amount of monthly pension benefits.

57.

Prior to the Galileo Plan, the UAL Plan and the Covia plans both had relatively complicated formulas for computing Participants' benefits, as those plans were integrated with Social Security benefits.  The January 1, 1993, Galileo International plan substituted in place of the old scheme a new approach: a simple, four element formula (*see* paragraph 9, *supra*).

58.

Indeed, Travelport allegedly used the new four-part formula throughout the Administrative Worksheet attached to the ERL, Exh. 7, (*see* Administrative Worksheet, p.  3), to calculate Plaintiff's alleged benefit (though its inputs were wrong), which confirms the Travelport's previous adherence to the formula.

59.

The Legacy Plan is a non-contributory Plan to which Participants do not and cannot contribute monetarily toward the benefits; the Plan Sponsor is the sole

19

monetary contributor to the Plan, as directed from time to time by the Plan actuaries.  (*See* Exh. 1, Legacy Plan, Section 5.02, p. 21.)

60.

Despite the fact that neither money contributed to the Plan, nor "years" of service, are at all relevant to the calculation of the amount of benefits (what is relevant are "Months of Benefit Service" and "Final Average Compensation," *see* Paragraph 9, *supra*; *see also* Exh. 1, Legacy Plan, Sections 6.02, p. 22, and Sections 2.11 and 2.14, pp. 5-7), nonetheless, Lansing-McGrath's June 2, 2014, letter insisted on showing a "Retirement Calculation" in terms of the meaningless statistics of money contributions, annuities and "years of pension service" instead of using the wording of the Plan's formula.  (*See* Exh. 21.)

61.

The term Months of Benefit Service is important because "Benefit Service" is a defined term – a Month of "Benefit Service" is what a participant earns for a "Month of Service" as defined in the Legacy Plan's Section 2.34(a).  (Exh. 1, pp. 10-11.)

62.

Benefit calculations under the old UAL and Covia plans became moot as of January 1, 1993, with one exception: each prior UAL employee brought with her

into the Legacy Plan her "Months of Service" equal to the number of Months of Service for Benefit accrual purposes that were standing to her credit under the prior plan as of December 31, 1992, (Exh. 1, Section 2.34(a)(ii), p. 11), and each Covia participant brought with her into the Amended and Restated Galileo International plan, effective January 1, 1993 her "Months of Service" standing to her credit under the prior plan as of December 31, 1992.

63.

The new formula contained in each of the Galileo plans and in the Legacy Plan were/are the same: as stated most recently in Section 6.02 of the Legacy Plan, the "Participant's Monthly Normal Benefit *shall* be determined as follows: 1.6% of his Final Average Compensation ["FAC"] MULTIPLIED BY: Months of Benefit Service ["MOBS"] / [DIVIDED BY] 12." (*See* Paragraph 9, *supra.*)

64.

With a view of this formula in mind, while analyzing Lansing-McGrath's June 2, 2014 letter (Exh. 21), one sees that she first fails to separate the calculation into its four (4) elements (0.016 X FAC X MOBS / 12). Rather, she first lists "United Benefits Transferred to Galileo" of $50.58 and a "Galileo International Benefit" of $199.53. Besides the fact that the monetary numbers are essentially meaningless under the formula, they are both *wrong* and confusingly so.

21

65.

As set forth above, after Plaintiff's employment was transferred to Apollo on January 1, 1993 (when she became a Participant in the 1993 Galileo International plan), she terminated employment on May 6, 1997.  In other words, Plaintiff only worked 53 months at Apollo (a Galileo entity) she terminated her employment. Applying the formula does not produce a Galileo benefit of $199.53 for 53 Months of Benefit Service – instead it gives a result of $96.71, leaving an unexplained $102.82 amount that *cannot* be a "Galileo" benefit.

66.

Finally, Lansing-McGrath lists an "Annuity Contract Purchased by United Airlines" in the amount of $235.24, which is relevant only insofar as it relates to part of her UAL Months of Benefit Service.  Participants are not concerned with the funding of their benefits – whether an annuity was purchased, and at what amount (and whether that amount is correct) does not change the pension formula in the Plan.

67.

The Worksheet attached to the June 2, 2014, letter (Exh. 21, p. 2), reveals that Travelport has allocated to Plaintiff a total of 266 months of "Pension Service," allegedly made up of UAL "Pre Age 25" credit for 26 Months, UA [Post

Age 25] credit for 187 Months, and Galileo/Covia Service credit of 53 Months. (*Id.*)

68.

Plaintiff disputes the accuracy of these Months of Benefit Service numbers.

69.

Returning to the unexplained $102.82 amount in paragraph 67, *supra*, it can be re-engineered (within a few cents for a rounding error) when one backs out the disputed UAL Months of Benefit Service (explained below) and the Annuity from the calculation used on page one of Exh. 21.

70.

The effect of this sleight-of-hand, however, is to conceal from (even sophisticated) Participants the fact that Travelport has followed a policy of not giving former UAL employees any Benefit Service credit at all for their service as Covia employees for the period from about July 1988 to December 31, 1992 – a period of, in Plaintiff's case, 54 Months of Benefit Service credit – despite there being no language in the Legacy Plan to support this subtraction.

71.

Had Lansing-McGrath's June 2, 2014 letter been perfectly transparent, it would have read this way:

United Airlines Plan Monthly Benefit       $388.67

Covia Plan Monthly Benefit                 $0.00

Galileo International Plan Monthly Benefit  $96.71

                                           $485.38 [.35 rounding error]

_____

## PRE AGE 25 SERVICE

72.

Plaintiff was born on November *, 1946. [DATE WITHHELD: PRIVACY]

73.

When Plaintiff became employed by UAL on September 4, 1968, she was just over two months shy of her 22nd birthday.  Thus, all of Plaintiff's UAL service after she was employed on September 4, 1968, and before November of 1971 was rendered "between the ages of 21 and 25."  (In other words, Plaintiff was already 21, and worked for 39 months for UAL before turning 25 years old.)

74.

Relying upon a provision in the UAL Plan that had excluded for benefit service the first 12 months of service of employees who were over age 21 when hired, Travelport has excluded from Plaintiff's Months of Benefit Service the period from September 4, 1968-69, leaving only 27 Months of Benefit Service for

24

Plaintiff's Pre Age 25 period.

75.

However, the SPD (Exh. 6, p. 36) for the present plan, in a section specifically applicable to Plan Participants who are former UAL employees, contains at bullet point 3 a provision crediting former UAL employees "with one Month of Benefit Service for each month of employment with United Air Lines that you completed between the ages of 21 and 25," without qualification.

76.

Pursuant to this SPD provision, all 39 months of Plaintiff's Pre Age 25 UAL service should count.

_____

## DISPUTE REGARDING 54 MONTHS OF COVIA SERVICE

77.

By letter dated July 9, 2014, a true and correct copy of which is attached hereto as Exhibit 22, and which Lansing-McGrath received, Plaintiff replied to Lansing-McGrath's June 2, 2014, letter, first acknowledging Lansing-McGrath's tacit recognition that Travelport's "Earnings" figures had, all along, been woefully incorrect, not based on factual information, and had caused a completely incorrect "Final Average Compensation" calculation for use in the formula.

78.

Plaintiff's July 9, 2014, letter went on to take issue with Lansing-McGrath's

contention that all outstanding matters were settled.  Specifically, Plaintiff raised

the subject of whether Travelport had correctly given Plaintiff proper credit for all

of the Months of Benefit Service Plaintiff had earned at UAL, Covia, and

"Galileo" [sic – Apollo], due to the discovery of the FAC "printout" falsity.  (*Id.*)

79.

It also noted the absence of any issue regarding Plaintiff being vested in her

benefit (*id.*) – an issue to which Lansing-McGrath never responded.

80.

Finally, Plaintiff stated: "If for any reason you dispute any of our numbers or

calculations, I demand that you supply me with all documents and records that you

claim support any such dispute and that you reference specifically [sic "any"] and

all language in the Plan that you contend supports any such dispute."  (*Id.*)

81.

Lansing-McGrath responded by letter dated October 1, 2014, starting with

some undisputed dates and references to the (now-irrelevant) Annuity UAL had

purchased and later transferred to Covia.  Most disturbingly, however, she referred

to three (3) enclosed "printouts" that looked suspiciously like the Neu "printout"

26

from 2012 that turned out to be grossly false.  A true and correct copy of her letter is attached hereto as Exhibit 23.

82.

Lansing-McGrath then referred to portions of the August 8, 1988 Covia Plan and concedes Plaintiff was a Participant from July 1, 1988, to December 31, 1992. [Notably, Plaintiff had requested this Plan from Travelport years earlier without success, based on Neu's stated position that it was not relevant to the determination of Plaintiff's monthly pension benefit.]

83.

Lansing-McGrath referred to sections of that plan dealing with "accrued Benefits" and "Participation," which are no longer relevant.  What Lansing-McGrath did *not* refer to was the only provision of the Covia plan that actually survived through to the January 1, 1993, new Amended and Restated Galileo International plan, namely the provision entitled "Section 3.6 Month of Service." (Exh. 3, p. 13.)

84.

Lansing-McGrath also correctly referred to the special prior UAL employee provisions in the 1993 Galileo International plan: "Section 4.01 … (a) Participants in Prior Plan as of December 31, 1992.  If such Employee participated in the Prior

27

Plan [*i.e.*, the Covia Plan] and remained an Employee as of the Effective Date [*i.e.*, January 1, 1993], his service credits under this Plan as of the Effective Date shall equal the service standing to his credit for eligibility, vesting and benefit accrual purposes, respectively, under the Prior Plan as of December 31, 1992; … ." (Exh. 4, p.16.)

85.

Lansing-McGrath did not note that "Prior Plan" under the 1993 Galileo International plan is defined as "Section 2.40 <u>Prior Plan</u>.  The Covia Pension Plan which was originally established as the Covia Mirror Pension Plan as of August 5, 1988."  (Exh. 4, p. 10.)

86.

Thus, in her analysis, Lansing-McGrath cited all of the sections necessary to reach the proper resolution of the question of Plaintiff's number of Months of Service and Months of Benefit Service for her employment with Covia, she just failed to then connect the dots – it is as though at the top of page 4 of her letter there is a paragraph missing.  (*See* Exh. 23, p. 4.)

87.

The dots get connected as follows: (1) the definition of "Month of Service" in Section 3.6 of the Covia Plan (Prior Plan) is functionally the same as that

28

contained in the Legacy Plan and the two earlier Galileo International plans; (2)

nothing in the Covia plan, the two Galileo International plans or the Legacy Plan

provides that Months of Service accumulated by Covia former UAL employees

should not be awarded to those Employees under the Covia plan; (3) the 1993

Galileo International plan specifically provided that the service of such employees

in fact "*shall* equal the Months of Service standing to the credit of the Employee or

Participant as of December 31, 1992 under the (Covia Plan);" (Exh. 4, emphasis

added); (4) the present Legacy Plan continues to contain virtually this identical

provision at Section 4.01(a) (Exh. 1, p. 20); therefore (5) Plaintiff is entitled to 54

Months of Service and 54 Months of Benefit Service for her 4½ years of Covia

service.

———————————

## PLAINTIFF'S CLAIM AND APPEAL PROCESS

### 88.

After receipt of Lansing-McGrath's October 1, 2014 letter, Plaintiff

contacted her to try to set up a four-party telephone conference call among

Plaintiff, Campbell, Lansing-McGrath, and Neu to discuss the problems with the

letter and the amount of Plaintiff's pension benefits generally.

89.

Such conference took place on January 14, 2015. A true and correct copy of Plaintiff's notes from that conference call is attached hereto as Exhibit 24. In it Plaintiff and Campbell tried to discuss several subjects: the possibility of Plaintiff beginning to draw the undisputed portion of her pension benefits under the Plan pursuant to a non-waiver agreement as to her rights to continue to disputing certain issues, Plaintiff's position as to her Months of Benefit Service for her Pre Age 25 service with UAL (discussed *supra*), the dispute over the number of Plaintiff's Months of Benefit Service for her UAL service from her 25th birthday to June 30, 1988, when she transferred to Covia (199 vs. 187, with 12 months of missing service, discussed *infra* at paragraphs 97, 99), and Travelport's total discounting of Plaintiff's 54 Months of Benefit Service for her service while employed by Covia through December 31, 1992 (discussed *supra*).

90.

Neu responded that he would discuss these matters (after three years of dealing with these issues) with Travelport's "ERISA counsel" and get back to Plaintiff. (*Id.*)

91.

After the conference call, Campbell tried to contact Neu on January 23 & 24,

and February 10, 11 & 26, 2015.  A true and correct copy of email correspondence

between them documenting some of the attempts is attached hereto as Exhibit 25.

Campbell then emailed Neu on February 28, 2015 but no direct substantive

conference on the issues ever took place.

92.

By letter from Neu dated March 4, 2015, a true and correct copy of which is

attached hereto as Exhibit 26, Travelport enclosed for the first time (after three

years of requests) one of the Covia plans, the UAL Plan, the 1993 and 1997

Galileo International plans, the 1993 Galileo International plan SPD, as well as yet

another copy of the 2008 Legacy Plan.

93.

For reasons that were not clear, Plaintiff and Campbell did not actually

receive those documents until July 13, 2015, possibly because of some

transmission problems.  However, Neu's assistant was very helpful and eventually

received.

94.

Plaintiff spoke directly to Amanda Svenson ("Svenson") at the TRSBC

about commencing receipt of the new base amount of her pension (the $485.35 that

was not in dispute), and being paid a "catch-up" lump sum representing past due

payments since November 1, 2011.  Svenson forwarded the necessary forms and

Plaintiff returned them to the TRSBC by letter dated May 20, 2015, a true a correct

copy of which is attached hereto as Exhibit 27, which TRSBC received.

95.

Plaintiff's May 20, 2015 letter quoted letters from both Lansing-McGrath

and Neu stating that Plaintiff's commencing the undisputed portion of her pension

payment would be without prejudice to her continuing to dispute the correctness of

calculation of Months of Benefit Service (which affects the full amount to be paid).

96.

Plaintiff's pension payments began on or about mid-June, 2015 under this

arrangement.

97.

Plaintiff submitted her Claim Letter for additional pension benefits on

August 8, 2015, as provided in the Legacy Plan, having reluctantly come to the

conclusion that Travelport and the Plan were not going to produce the items she

had for so long requested and were not going to address in any substantive

satisfactory way Plaintiff's concerns and questions about why they had excluded so

substantial a part of Plaintiff's Months of Benefit Service from her pension

calculation.  A true and correct copy of Plaintiff's Claim Letter dated August 8,

32

2015 is attached hereto as Exhibit 28, which Travelport received.

98.

By letter dated September 30, 2015, a true and correct copy of which is attached hereto as Exhibit 29, Travelport notified Plaintiff that it was taking an additional two months to respond to the Claim Letter, despite not specifying the grounds required by Section 17 of the Legacy Plan to justify the extension.

99.

Travelport responded to the Claim Letter on December 7, 2015, by denying Plaintiff's claim to additional pension benefits.  A true and correct copy of the Claim Denial Letter is attached hereto as Exhibit 30.  Travelport determined as follows: (1) no service credit is given for Plaintiff's first year of service (while she was aged 21); (2) because the Plan is allegedly not required to keep (and has not done so) "source documents" substantiating why 12 months of service was subtracted from her 199 Months of Benefit Service, she will receive no credit for those missing 12 months; and (3) no months of service credit is given for the period of time she was employed by Covia.  (*Id.*)

100.

On February 29, 2016, Travelport kindly allowed Plaintiff an additional month in which to file a request for reconsideration of its claim denial.

33

101.

Plaintiff submitted her Request to the Benefits Committee to Review and Revoke its denial of Plaintiff's Claim (the "Request to Review") on April 5, 2016, as provided in the Legacy Plan. A true and correct copy of the Request to Review is attached hereto as Exhibit 31, which the Committee received.

102.

The Denial Letter also totally ignored Plaintiff's alternate demand for additional documents contained in the Claim Letter, which asked for claims file documents to be produced in the event Travelport denied the claim. Exh. 30.

103.

On June 3, 2016, Travelport again notified Plaintiff that it was taking an additional two months to respond to the Request to Review again without specifying the grounds required by Section 17 of the Legacy Plan to justify the extension. A true and correct copy of such extension letter is attached hereto as Exhibit 32.

104.

On August 2, 2016, Travelport responded to the Request to Review and denied it on all grounds. A true and correct copy of the Appeal Denial Letter is attached hereto as Exhibit 33.

105.

Upon issuance of Travelport's Appeal Denial Letter, Plaintiff had exhausted all administrative remedies required by the Plan.

106.

In its Appeal Denial Letter, the Committee ruled that despite the clear, unambiguous, and unqualified statement in the 2009 Legacy Plan SPD that "[i]f you were employed by United Air Lines between the ages of 21 and 25, you will be credited with one month of Benefit Service for each month of employment with United Air Lines that you completed between ages 21 and 25," that provision does not apply to Plaintiff because she had not been employed by UAL for one full year first. (Exh. 6, p. 36.)

107.

The Committee then discussed the subtracted 12 Months of Benefit Service dispute regarding Plaintiff's post age 25 service of 199 months. The Committee admits they reviewed Plaintiff's "personnel file" and reviewed "printouts of [her] employment through 12/31/1980." (Exh. 33, p. 3.) Amazingly, the Committee apparently is saying they reviewed the type of source records Plaintiff has for so long been requesting Travelport to review/produce, but continues to fail and/or refuse to produce them to Plaintiff, alleging instead that Plaintiff should just "trust"

the "printouts" that had, heretofore been proven entirely incorrect.  Neither ERISA nor common sense requires that.

108.

Further, the Committee again ruled that no Months of Benefit Service attributable to Plaintiff's Covia employment would be credited to her (the 54 missing months).  (Exh. 33, p. 3-5.)

109.

In addition, the Committee once again totally ignored the alternative demand in Plaintiff's Request to Review for additional documents necessary to allow Plaintiff to evaluate her claim, despite the fact that the final part of the Claim Denial letter includes disclosures required by Section 17 of the Legacy Plan in the event of a claim denial: "[i]f you disagree, Section 17.12(c) of the plan provides that within 90 days of the receipt of this letter you have the right to: …  (iii) upon request, obtain at no charge reasonable access to, and copies of, all documents and other information relevant to the claim." (Exh. 33, p. 7.)

110.

Plaintiff's request for those documents and other information had been made continuously over the entire pendency of this dispute on numerous occasions, and in any event was contained in several places in Plaintiff's Request to Review,

(Exh. 31, pp. 24-25.)  Neither a response nor documents were ever forthcoming.

111.

Travelport's base position that it is not required to produce relevant supporting documents or claims file documents to Plaintiff is inconsistent with both ERISA and the Plan; specifically Sections 17.12(c)(iii) and (d)(iii) independently require Travelport to "produce documents, records, and other information relevant to the claim."  (Exh. 1, p. 58-59.)

112.

Both Neu and Lansing-McGrath stated to Plaintiff and Campbell both in writing and in conversations that they were unaware of any statute, regulation, or case law compelling Travelport to provide the types of materials Plaintiff had so often requested.  But, *see Barton v. ADT Security Services Pension Plan, et al.*, 820 F.3d 1060 (9th Cir. 2016); *Maiuro v. Federal Express Corp., et al.*, 843 F. Supp. 935 (D.N.J. 1994).

113.

At no time during Plaintiff's employment with UAL, Covia, Apollo, Galileo, or any other Travelport predecessor, was Plaintiff warned that the Plan and/or its administrators/recordkeepers/fiduciaries were not keeping the types of underlying records it would need to substantiate Plaintiff's key inputs into the pension Plan

formula, including those for Final Average Compensation and Months of Benefit Service.

114.

At no time during Plaintiff's employment with UAL, Covia, Apollo, Galileo, or any other Travelport predecessor, was Plaintiff warned that she needed to keep/maintain the types of underlying records the Plan would need to substantiate Plaintiff's key inputs into the pension Plan formula, including those for Final Average Compensation and Months of Benefit Service.

115.

Upon information and belief, at no time during their employment with UAL, Covia, Apollo, Galileo, or any other Travelport predecessor, was any putative class member warned that the Plan and/or its administrators/recordkeepers/fiduciaries were not keeping the types of underlying records it would need to substantiate key inputs into the pension Plan formula for Participants, including those for Final Average Compensation and Months of Benefit Service.

116.

Upon information and belief, at no time during their employment with UAL, Covia, Apollo, Galileo, or any other Travelport predecessor, was any putative class member warned that they needed to keep/maintain the types of underlying records

38

the Plan would need to substantiate key inputs into the pension Plan formula for Participants, including those for Final Average Compensation and Months of Benefit Service.

117.

Under ERISA, not only do fiduciaries have an affirmative duty to provide complete and accurate information to participants and beneficiaries, they also have a duty to warn (*i.e.,* not to stay silent) when "silence might be harmful."  *See, e.g., Ervast v. Flexible Prods. Co.*, 346 F.3d 1007, 1016 & n.10 (11th Cir. 2003) (citing approvingly *Krohn v. Huron Mem'l Hosp*., 173 F.3d 542, 548-51 (6th Cir. 1999) (ERISA fiduciary with knowledge of beneficiary's status/situation has affirmative duty to communicate material facts to beneficiary which will allow for informed decision); *Bixler v. Central Penn. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300-01 (3d Cir. 1993) (ERISA fiduciary's duty to provide "complete and accurate information to its beneficiaries" "entails not only a negative duty not to misinform, *but also an affirmative duty to inform when the trustee knows that silence might be harmful*") (emphasis added)).

118.

All conditions precedent to the bringing of Plaintiff's claims asserted herein have occurred or have been performed.

_____

## **CLASS ACTION ALLEGATIONS**

### 119.

Plaintiff further brings this action as a class action pursuant to Fed. R. Civ.

P. 23.  Plaintiff asserts a class of individuals in the United States who were harmed

by Defendants' conduct in that, *inter alia*, they are not being paid proper pension

benefits (the "Underpaid Pension Benefits Class").  This class is broken down into

two subclasses, one of individuals in the United States who were harmed by

Defendants' conduct in that they are not receiving the appropriate Final Average

Compensation (the "FAC Subclass"), and one of individuals in the United States

who were harmed by Defendants' conduct in that they are not receiving the

appropriate Months of Benefit Service (the "MOBS Subclass").

### 120.

The Underpaid Pension Benefits Class is defined as follows:

"all persons who reside in the United States, who, during the applicable time

period, (1) are vested participants in their pension benefit under the Legacy Plan,

(2) are eligible to begin and/or have begun receiving pension benefits, and (3) have

had their pension benefits inappropriately reduced with regard to Final Average

Compensation and/or Months of Benefit Service."

121.

The FAC Subclass is defined as follows:

"all persons who reside in the United States, who, during the applicable time period, (1) are vested participants in their pension benefit under the Legacy Plan, (2) are eligible to begin and/or have begun receiving pension benefits, and (3) had their pension benefits inappropriately reduced due to Defendants' failure to keep appropriate pay records substantiating Final Average Compensation."

122.

The MOBS Subclass is defined as follows:

"all persons who reside in the United States, who, during the applicable time period, (1) are vested participants in their pension benefit under the Legacy Plan, (2) are eligible to begin and/or have begun receiving pension benefits, and (3) had their pension benefits inappropriately reduced due to: (a) Defendants' failure to keep appropriate time and/or pay records substantiating Months of Benefit Service; and/or (b) Defendants' position that Pre Age 25 service is not credited in accordance with the 2009 Legacy Plan SPD; and/or (c) Defendants' position that no Months of Benefit Service will be credited for Covia employment months of service."

123.

Plaintiff excludes from each class any entities currently in bankruptcy, any

entity whose obligations have been discharged in bankruptcy, and any governmental agency or judicial officer.  Plaintiff maintains the right to create additional subclasses or classes, if necessary, and to revise this definition to maintain a cohesive class which does not require individual inquiry to determine liability.  All information necessary to determine the class members and the damages those members suffered is in Defendants' possession or control.

## NUMEROSITY

### 124.

The exact number of class and subclass members is unknown to Plaintiff at this time, but upon information and belief, is in excess of forty for each subclass, and such information can be ascertained through appropriate discovery, specifically from records maintained by Defendants and their agents.

## EXISTENCE AND PREDOMINANCE OF
## COMMON QUESTIONS OF LAW AND FACT

### 125.

There are common questions of law and fact of general interest to the class and subclasses. These common questions of law and fact predominate over any questions affecting only individual members of the class. Said common questions include, but are not limited to, the following:

a.    Whether Defendants improperly failed and/or refused to keep

appropriate pay records to substantiate Final Average Compensation as needed for the pension benefit formula.

b.      Whether Defendants improperly failed and/or refused to keep appropriate time records to substantiate Months of Benefit Service as needed for the pension benefit formula.

c.      Whether Defendants improperly calculated Participants' Final Average Compensation based on inaccurate records.

d.      Whether Defendants improperly subtracted Months of Benefit Service based on inaccurate records.

e.      Whether Defendants failed to warn Participants that Defendants did not have any intention of, and were not, keeping time and/or pay records necessary to substantiate the Plan's calculation of Final Average Compensation.

f.      Whether Defendants failed to warn Participants that Defendants did not have any intention of, and were not, keeping time and/or pay records necessary to substantiate the Plan's calculation of Months of Benefit Service.

g.      Whether Defendants have applied uniformly (or at all) their position that the 2009 Legacy Plan SPD's provision regarding crediting Pre Age 25 service.

h.      Whether Defendants have applied uniformly (or at all) their position that no Covia employee should be credited with Months of Benefit Service for

Covia employment.

i.      Whether Defendants' positions with regard to not crediting Months of

Benefit Service are legally viable, given the wording of the Plan documents.

j.      Whether members of the class have been damaged by Defendants'

wrongful conduct.

k.      Whether members of the FAC Subclass have been damaged by

Defendants' wrongful conduct.

*l.*      Whether members of the MOBS Subclass have been damaged by

Defendants' wrongful conduct.

## TYPICALITY AND NUMEROSITY

### 126.

The claims of the named Plaintiff are typical of the claims of the class.

Upon information and belief, the total number of members of the putative class and

the putative subclass each exceed forty each.

## ADEQUATE REPRESENTATION

### 127.

Plaintiff will fairly and adequately protect the interests of the members of

the class and has no interest antagonistic to those of other class members. Plaintiff

has retained class counsel competent to prosecute class actions and such class

counsel are financially able to represent the class.

## **SUPERIORITY**

128.

The class action device is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impracticable. The interests of judicial economy favor adjudicating the claims for the Plaintiff class and subclasses rather than for the Plaintiff solely on an individual basis.

129.

Questions of law and fact predominate over any questions affecting only individual members.

130.

All conditions precedent to the bringing of the putative class members' claims asserted herein have occurred or have been performed.

131.

Alternatively, any condition precedent to the bringing of the putative class members' claims asserted herein that has not occurred or has not been performed should be excused as futile, as a matter of fact and/or law.

———————————————

## COUNT I – ON BEHALF OF PLAINTIFF

## DECLARATORY JUDGMENT: 29 U.S.C. § 1132(a)(1)(B)

132.

The allegations contained in Paragraphs 1 through 118 above are re-alleged and incorporated by reference as if fully set forth herein.

133.

Title 29 U.S.C. § 1132(a)(1)(B) provides that a participant may bring a civil action "(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

134.

Plaintiff is entitled to pension benefits in the amount of the pension formula set forth in the Legacy Plan (simplified as 0.016 x FAC x MOBS / 12).  The Plan and Plaintiff's rights thereunder were violated when Plaintiff's claim requesting additional pension benefits was not properly and timely granted.

135.

Pursuant to 28 U.S.C. § 2201 and 29 U.S.C. § 1132(a)(1)(B), Plaintiff is entitled to a declaratory judgment setting the correct and appropriate amount of her monthly pension benefits on a going-forward basis, in an amount to be proven at

trial.

## COUNT II – ON BEHALF OF PLAINTIFF

## CLAIM FOR BENEFITS: 29 U.S.C. § 1132(a)(1)(B)

136.

The allegations contained in Paragraphs 1 through 118 above are re-alleged and incorporated by reference as if fully set forth herein.

137.

Plaintiff is entitled to pension benefits in the amount of the pension formula set forth in the Legacy Plan (simplified as 0.016 x FAC x MOBS / 12).

138.

By refusing to provide pension benefits in the appropriate amount, Defendants have breached the terms and conditions of the Plan.

139.

Defendants are liable to Plaintiff for all past-due pension benefits unpaid to date, plus prejudgment interest.

## COUNT III – ON BEHALF OF PLAINTIFF

## DOCUMENT PENALTIES: 29 U.S.C. § 1132(c)

140.

The allegations contained in Paragraphs 1 through 118 above are re-alleged

47

and incorporated by reference as if fully set forth herein.

141.

ERISA specifies that a Plan Administrator has thirty (30) days to comply

with a participant's request for Plan documents. 29 U.S.C. §§ 1024(b)(4),

1132(c)(1)(B).  Failure to provide the requested documents entitles a participant to

petition the Court for the $110.00 per day penalty under 29 U.S.C. § 1132(c)(3).

142.

Under federal law, a Plan Administrator has thirty (30) days to comply with

a participant's request for Plan documents, including the Plan, the summary plan

description, and any other documents under which the Plan is administered. 29

U.S.C. §§ 1024(b)(4), 1132(c)(1)(B).

143.

Plaintiff, by and through her undersigned counsel, requested Plan documents

from the Plan Administrator.

144.

The Plan Administrator responded, producing certain Plan documents, but

refusing to produce other documents.  Upon information and belief, the Plan

documents produced were not all of the documents "under which the Plan is

administered" pursuant to 29 U.S.C. § 1024(b)(4).

48

145.

Some three (3) years passed from the time of Plaintiff's request until the

Plan Administrator produced certain responsive, relevant plan documents.

146.

By failing to provide timely all relevant and/or requested Plan documents, the

Plan Administrator has breached its duties mandated by federal law.

147.

Plaintiff is entitled, pursuant to the Court's discretion granted by 29 U.S.C.

§ 1132(c)(3), to have penalties levied against the Plan Administrator in the amount

of $110.00 for each day the Plan documents were not produced, after the 30th day.

## **COUNT IV – ON BEHALF OF PLAINTIFF**

## **BREACH OF FIDUCIARY DUTIES – 29 U.S.C. § 1132(a)(3)**

148.

The allegations contained in Paragraphs 1 through 118 above are re-alleged

and incorporated by reference as if fully set forth herein.

149.

Title 29 U.S.C. § 1132(a)(3) states that a civil action may be brought: "by a

participant, … (A) to enjoin any act or practice which violates any provision of this

subchapter or the terms of the plan, or (B) to obtain other appropriate equitable

relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

150.

Defendants' failure to warn Plaintiff, as specified in paragraphs 113-114 and 117 *supra*, constitute a breach of Defendants' fiduciary duties under ERISA.

151.

Defendants are liable to provide appropriate equitable relief to Plaintiff to remedy the harm caused by their breaches of fiduciary duties alleged herein.

## COUNT V – ON BEHALF OF PLAINTIFF

## ATTORNEYS' FEES – 29 U.S.C. § 1132(g)

152.

The allegations contained in Paragraphs 1 through 151 above are re-alleged and incorporated by reference as if fully set forth herein.

153.

29 U.S.C. § 1132(g) provides that the Court may award reasonable attorneys' fees and costs of bringing this action.

154.

Defendants' violations of ERISA have caused and/or will cause Plaintiff to incur litigation costs and attorneys' fees to remedy the breaches herein.

155.

This Court should award Plaintiff her reasonable attorneys' fees and the costs of bringing this action.

## COUNT VI – ON BEHALF OF THE CLASS

## DECLARATORY JUDGMENT: 29 U.S.C. § 1132(a)(1)(B)

156.

The allegations contained in Paragraphs 1 through 131 above are re-alleged and incorporated by reference as if fully set forth herein.

157.

Title 29 U.S.C. § 1132(a)(1)(B) provides that a participant may bring a civil action "(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

158.

Plan Participants such as the putative class members herein are entitled to pension benefits in the amount of the pension formula set forth in the Legacy Plan (simplified as 0.016 x FAC x MOBS / 12). The Plan and Plan Participants' rights thereunder have been and are being violated every time a putative class member receives a pension benefit that is less than the amount required under the Plan.

159.

Pursuant to 28 U.S.C. § 2201 and 29 U.S.C. § 1132(a)(1)(B), the putative

class members are entitled to a declaratory judgment setting the correct and

appropriate amount of their monthly pension benefits on a going-forward basis, in

an amount to be proven at trial.

## COUNT VII – ON BEHALF OF THE CLASS

## CLAIM FOR BENEFITS: 29 U.S.C. § 1132(a)(1)(B)

160.

The allegations contained in Paragraphs 1 through 131 above are re-alleged

and incorporated by reference as if fully set forth herein.

161.

Plan Participants such as the putative class members herein are entitled to

pension benefits in the amount of the pension formula set forth in the Legacy Plan

(simplified as 0.016 x FAC x MOBS / 12).

162.

By failing and/or refusing to provide pension benefits in the appropriate

amount, Defendants have breached the terms and conditions of the Plan.

163.

Defendants are liable to the class for all past-due pension benefits unpaid to

date, plus prejudgment interest.

## COUNT VIII – ON BEHALF OF THE CLASS

## BREACH OF FIDUCIARY DUTIES – 29 U.S.C. § 1132(a)(2)

### 164.

The allegations contained in Paragraphs 1 through 131 above are re-alleged and incorporated by reference as if fully set forth herein.

### 165.

Title 29 U.S.C. § 1132(a)(2) states that a civil action may be brought: "by a participant, … for appropriate relief under section 1109 of this title."  Section 1109 states, in relevant part: "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

### 166.

Defendants' failure to warn the putative class members, as specified in paragraphs 115-117 *supra*, constitute a breach of Defendants' fiduciary duties

under ERISA.

167.

Defendants are liable to provide appropriate equitable relief to the Plan (via the class members) to remedy the harm caused by their breaches of fiduciary duties alleged herein.

## COUNT IX – ON BEHALF OF THE CLASS

## ATTORNEYS' FEES: 29 U.S.C. § 1132(g)

168.

The allegations contained in Paragraphs 1 through 132 above are re-alleged and incorporated by reference as if fully set forth herein.

169.

29 U.S.C. § 1132(g) provides that the Court may award reasonable attorneys' fees and costs of bringing this action.

170.

Defendants' violations of ERISA have caused and/or will cause the class members to incur litigation costs and attorneys' fees to remedy the breaches herein.

171.

This Court should award the class members their reasonable attorneys' fees and the costs of bringing this action.

WHEREFORE, Plaintiff Angela Henderson Williamson prays that the Court:

(a)    Issue a declaratory judgment that Plaintiff and the class members are entitled to an amount certain in pension benefits due under the terms of the Plan in the future, such amount to be proven at trial;

(b)    Issue a declaratory judgment that Defendants produce all documents other information previously requested by and/or necessary to enable Plaintiff and all other putative class members to calculate the proper amount of the pension benefits to which they are entitled under the Plan; and

(c)    Issue a declaratory judgment that Defendants have, in their conduct towards Plaintiff and the putative class members, violated their ERISA fiduciary duties;

(d)    Enjoin Defendants from further violations of ERISA with regard to any activities they conduct that are attempts to pay Plan Participants less than what they are entitled to under the Plan;

(e)    Award Plaintiff and the class members past-due pension benefits plus prejudgment interest as provided by law and/or the Plan;

(f)    Award all applicable pre- and post-judgment interest;

(g)    Award Plaintiff and the class members the reasonable costs and expenses of this action, including reasonable attorneys' fees pursuant to 29 U.S.C.

§ 1132(g); and

(h)    Grant such other and further relief as this Court deems just and appropriate.

Respectfully submitted, this 1st day of February, 2017.

_/s/  Nancy B. Pridgen_____
Nancy B.  Pridgen, Esq.
Georgia Bar No.  587949
Lead Counsel

PATEL BURKHALTER LAW GROUP
4045 Orchard Road, Building 400
Atlanta, Georgia 30080
Phone: 404-551-5884
Fax: 678-812-3654
Email: npridgen@patelburkhalter.com

_/s/  Douglas N. Campbell_____
Douglas N.  Campbell, Esq.
Georgia Bar No.  106250

Douglas Campbell & Associates, P.C.
4776 East Conway Drive, N.W.
Atlanta, Georgia 30327
(404) 943-1354 Tel
(404) 550-2856 Cell
(404) 256-0423 Fax
E-mail: dougcampbell@mindspring.com

*Counsel for Plaintiff*