## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ANGELA HENDERSON
WILLIAMSON, on behalf of herself
and all others similarly situated

       Plaintiff,

    v.

TRAVELPORT, LP & GALILEO &
WORLDSPAN U.S. LEGACY
PENSION PLAN,

       Defendants.

1:17-cv-406-WSD

## OPINION AND ORDER

This matter is before the Court on Defendant Travelport, LP, and Galileo &

Worldspan U.S. Legacy Program Plan's (collectively, "Defendants") Motion to

Dismiss Plaintiff's Amended Complaint [19] ("Motion to Dismiss"). Also before

the Court is Plaintiff's Request for Oral Argument on her Response in Opposition

to Defendants' Motion to Dismiss Plaintiff's Amended Complaint [21] ("Motion

for Oral Argument").

## I. BACKGROUND

### A. Facts

This action arises from Defendants' alleged violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq. Plaintiff asserts, on behalf of herself and others similarly situated to her, that Travelport, LP ("Travelport") wrongfully denied her pension benefits under the Galileo & Worldspan U.S. Legacy Plan based on miscalculations. She asserts, on behalf of herself only, that Defendants failed to produce certain documents supporting the calculation of her benefits.[1]

#### 1. The Parties and the Plan

On or about September 4, 1968, Plaintiff began working as a stewardess for United Airlines, Inc. ("UAL"). (Amended Complaint [16] ("Am. Comp.") ¶ 12). During her time at UAL, she also worked as a ticket reservation agent and technical support agent. (Id.). Plaintiff was continuously employed with UAL until approximately June 30, 1988, when "certain UAL employees, Plaintiff among them, were transferred to . . . Covia [Corporation ("Covia")]." (Id. ¶ 13). Plaintiff

---

[1] Travelport, LP, as discussed further below, is the result of various mergers and ownership changes. While it is not entirely clear, it appears that United Air Lines, Inc. transitioned some of its business to Covia Corporation, then to Apollo Travel Services Partners, then to Galileo International, LLC, and finally to Travelport, LP. ([16] at ¶¶ 13-16; see also [19.1] at 9-10, n.1; [4.1] at 8-9).

worked for Covia until approximately December 31, 1992.  (Id.).  "On or about

January 1, 1993, Plaintiff's employment was transferred to Apollo Travel Services

Partners [("Apollo")], which upon information and belief was a successor by

mergers and name changes to Covia."  (Id. ¶ 15).  Plaintiff's last day of

employment with Apollo was May 6, 1997.  (Id. ¶ 21).

Plaintiff alleges that she was a pension plan participant during the entirety of

her employment with UAL, Covia, and Apollo—approximately twenty-eight (28)

years.  (Id. ¶ 21).  Plaintiff first participated in the UAL Non-Union Ground

Employees' Retirement Plan.  (Id. ¶ 12; see also [4.2]).  Plaintiff then participated

in the Covia Pension Plan.  (Id. ¶ 14; see also [4.3]).  Plaintiff finally participated

in the Galileo International Employees Pension Plan.  (Id. ¶ 15; see also [4.4]).

Plaintiff states that the Galileo International Employees Pension Plan was later

amended and restated as the Galileo & Worldspan U.S. Legacy Pension Plan [4.1]

(the "Plan"), which Plaintiff asserts is now the "operative plan" governing her

pension benefits.  (Id. ¶ 16, 20; see also [4.1] at 9).

The Plan is an employee pension plan sponsored and administered by

Travelport within the meaning of ERISA, 29. U.S.C. § 1002(2)(A).  (Galileo &

Worldspan U.S. Legacy Pension Plan Summary Plan Description [4.6] ("Summary

Plan Description") at 32).  It applies to any employee terminating employment "on

or after January 1, 1997," which includes Plaintiff. ([4.1] at 9). The Plan is funded by Travelport contributions, which are determined by the Plan's actuary. (Id.). Plan participants are not themselves permitted to make contributions. (Id.).

The Plan is a "non-integrated defined benefit pension plan," and the terms and details for determining benefits are outlined in the Plan. ([4.1] at 8). The Plan states that "Normal Retirement Benefits" are calculated using the following formula: "1.6% of your monthly Final Average Compensation multiplied by Months of Benefit Service divided by 12." ([4.1] at 29). "Final Average Compensation" is defined as:

> [T]he highest monthly average of a Participant's Compensation attributable to the sixty (60) consecutive Months of Service occurring during the last one-hundred twenty (120) Months of Service of employment with the Employer; provided, however, that if a Participant has fewer than sixty (60) Months of Service with the Employer, such Participant's Final Average Compensation shall be determined by dividing the total Compensation for all Months of Service during his period of employment by the number of such Months of Service. With respect to a Participant who becomes Disabled, Final Average Compensation shall be determined as of his date of Disability.

([4.1] at 16). The Plan includes in its "Benefit Service" definition the following: "(b) Prior Plan Participant. A Participant who was in [a] Prior Plan[2] shall be credited with months of Benefit Service equal to the number of Months of Service

---

[2] In this case, Plaintiff participated in Prior Plans and this definition credits her for her prior participation.

for benefit accrual purposes that were standing to his credit under the Prior Plan as of December 31, 1992." ([4.1] at 12).

The Summary Plan Description provides that, when a Plan participant decides to retire and receive payments, he or she may contact the Travelport Retirement Benefits Center ("TRBC") to start the plan benefit process. ([4.6] at 20). The Employee Benefits Committee (the "Committee") is responsible for the day-to-day operations of the Plan. (Id. at 32). The Plan states that the Committee "shall have the discretionary authority to determine eligibility for Plan benefits and to construe and interpret the terms of the Plan, including the making of factual determinations, and the decision thereon of the Committee shall be final and conclusive and binding upon all persons to the extent permitted by law." ([4.1] at 62). If a Plan participant disagrees with a determination regarding his or her benefits or other rights under the Plan, the Plan provides that he or she may file a claim following the procedures outlined in the Plan. ([4.1] at 65).

2.      Plaintiff's Request for Documents Substantiating Her Pension Benefits

Plaintiff alleges that, in anticipation of her December 1, 2011, "normal" retirement date, she contacted Travelport about the process for making a claim for

pension benefits under the Plan.[3] ([16] ¶ 25).  Plaintiff alleges that, starting in

mid-2011, she spoke with several individuals concerning how to apply for her

pension benefits under the Plan.  ([16] ¶ 26).  She asserts that she spoke, or

otherwise corresponded with, Russell Ferrante ("Ferrante") of Travelport, Don

Johnson ("Johnson") of TRBC, Jennifer Lansing McGrath ("McGrath") of TRBC,

and Douglas Neu ("Neu"), Travelport's in-house lawyer.  ([16] ¶ 18, 26).  Plaintiff

acknowledges she was provided with a number of documents regarding the Plan,

but claims she was not provided with any "documents or backup regarding the

underlying figures used to calculate  . . . the Final Average Compensation" that

applied to her.  (Id. ¶¶ 33-34).

     Plaintiff also alleges she requested, orally and in writing, documents

supporting the benefits that she would receive.  She asserts that she received the

following responses to her document requests, on the dates indicated:

- February 9, 2012: Ferrante provided to Plaintiff her Early Retirement Letter supplied to Plaintiff on October 15, 1999, but without the "Administrative Worksheet" that was initially attached in 1999. ([16] ¶ 29).

---

[3]    Plaintiff comments she inquired about making a claim for pension benefits in October 1999, when she was considering early retirement, and was supplied on October 15, 1999, with an Early Retirement Letter (the "October 15th Letter") and an "Administrative Worksheet" regarding the benefits that she was entitled to receive if she retired early and what she would receive if she retired at her "normal" retirement age.  ([16] ¶¶ 22-23).

- February 10, 2012: Plaintiff orally requested "the plan documents containing the formulas referred to in the October [15th] [] Letter, historical documents relating to the plan and any changes made to the plans or formulas over the years, documents relating to the corporate history and documents relating to the calculation of the amount of the benefits, and Plaintiff's attendance records during her employment." ([16] ¶ 31).

- February 17, 2012: Neu provided Plaintiff with the current Legacy Plan, the then-current Summary Plan Description, and a 1994 draft of the Summary Plan Description for the 1993 predecessor Galileo International plan. He also provided in narrative form some additional information. ([16] ¶ 34).

- April 12, 2012: Plaintiff's counsel orally requested, without specifics, documents demonstrating that the calculation of monthly pension benefits was correct. ([16] ¶ 35).

- April 18, 2012: Neu provided Plaintiff with another copy of the October 15th Letter, "this time with the Administrative Worksheet and the benefit calculation contained therein (the computational formula in which was [sic] supposed to be drawn from the Legacy Plan, Section 6.02 and related Definitions." ([16] ¶ 36).

- August 21, 2012: Plaintiff sent Travelport an email stating, "By five o'clock p.m. on Tuesday, August 28th, you will physically deliver to me, in hard copy (no emails with attachments or the like) ALL of the materials that I have previously requested. Those will include every document, plus sworn statements from witnesses with personal knowledge explaining or supplying facts as to which testimony would be necessary, which you would present in court to prove conclusively the amount of Mrs. Williamson's pension." ([4.13] at 3; see also [16] ¶ 145).

- August 27, 2012: Neu responded with a computer printout containing "some additional 'Pensionable Earnings History,'" "some computer

numbers concerning 'Total Benefit Service,'" and "a copy of a November 15, 1990, letter to Plaintiff from UAL, allegedly regarding the amount of pension benefits she had accrued while a UAL employee." Neu stated: "Travelport has complied fully with ERISA's requirements for the provision of documentation to a participant, and, in fact, has gone beyond the law's requirements in order to assist Plaintiff." ([4.14] at 2; see also [16] ¶ 42).

- August 27, 2012: TRBC sent Plaintiff a Pension Modeling Statement. ([16] ¶ 46).

- October 9, 2012: Plaintiff's counsel sent, by email, a request seeking the computational formula used to arrive at each annual earnings figure for the years 1987 to 1996, with underlying computations for each year, and copies of original documents. ([4.16]; see also [16] ¶ 145).

- October 22, 2012: Neu responded by letter stating: "We are not going to turn over any additional documents. . . . We are confident we have met and exceeded the requirements of the law to provide [Plaintiff] with documentation to explain the calculation of her pension benefit." ([4.17]; see also [16] ¶ 48).

- January 23, 2014: Plaintiff submitted an "extensive written letter" directly to TRBC making what appears to be the same request made in her October 9, 2012, letter. ([4.18] see also [16] ¶ 50).

- March 3, 2014: TRBC responded to Plaintiff's January 23, 2014, request reiterating that it was not obligated to provide Plaintiff's earnings history. The letter states: "Travelport has provided you with all the required data elements needed to understand the Plan's calculation of your accrued month benefit calculation and has fully complied with ERISA's requirements for the provision of documents to a participant." ([4.19] at 2).

- May 20, 2014: Plaintiff's counsel submitted a written request, with accompanying documentation, to commence receipt of the undisputed amount of Plaintiff's monthly pension payments.  ([4.20])

- July 9, 2014: Plaintiff's counsel wrote Travelport: "I now find it necessary to investigate and demand backup for the other calculation contained in the spurious worksheet—my Months and Years of Benefit Service."  ([4.22] at 3).[4]

 Plaintiff claims that, upon providing TRBC with her W-2 Forms "going back decades," TRBC "tacitly admitted" in a letter to Plaintiff dated June 2, 2014, that it used an incorrect earnings amounts in computing her Final Average Compensation.  ([16] ¶ 52-54; see also [4.21]).  TRBC updated Plaintiff's earnings accordingly—adjusting the amount from $77,973.57 to $82,111.  (Id. ¶ 52-54; see also [4.21]).  Plaintiff contends that despite TRBC's "updating" her earnings, TRBC's "new" calculation improperly calculated her "Months of Benefit Service," "Pre Age 25," and "Months of Service."  (Id. ¶¶ 56-87).

 Plaintiff alleges she filed, in May 2015, a claim to receive the undisputed amount of her pension benefits with the understanding that her pension payment would be without prejudice to her continuing to dispute the accuracy of the

---

[4]     Approximately one year later, on March 4, 2015, Travelport provided Plaintiff, allegedly for the first time, with one of the Covia pension plans, the UAL Plan, the 1993 and 1997 Galileo International plans, the 1993 Galileo International Plan Summary Plan Description, and an additional copy of the Plan.  Plaintiff states that "[f]or reasons that were not clear," Plaintiff did not actually receive those documents until July 13, 2015."  ([16] at ¶ 93).

"Months of Benefit Service," "Pre Age 25," and "Months of Service" amounts. (Id. ¶¶ 94-95).

In mid-June 2015, Plaintiff allegedly began receiving her undisputed monthly pension benefits. (Id. ¶ 96). On August 8, 2015, Plaintiff submitted a Claim Letter for the additional, disputed monthly pension benefits. Plaintiff argued in the Claim Letter that she was entitled to $629.53 per month— approximately $144.18 more than the Plan's $485.35 per month calculation. (Id. ¶ 97; see also [4.33] at 2).

On December 7, 2015, Travelport, through its Employee Benefits Committee (the "Committee"), denied Plaintiff's claim for additional pension benefits. (Id. ¶ 99). Travelport determined that: (1) Plaintiff was not entitled to service credit for Plaintiff's first year of service (while she was age 21); (2) Plaintiff was not entitled to an additional 12 months in the Months of Benefit Service calculation; and (3) Plaintiff's pension benefit was required to be offset by an annuity purchased by UAL to cover benefits accrued as of July 1, 1985. ([4.33] at 5-7). Plaintiff appealed the decision. (Id. ¶ 101). On August 2, 2016, the Committee denied the appeal. (Id. ¶ 104; see also [4.38]).

B.    Procedural History

On February 1, 2017, Plaintiff filed her Complaint, and on May 9, 2017,

Plaintiff filed her First Amended Complaint [16] ("Am. Compl.").  In this action,

Plaintiff seeks, on behalf of herself, and all others similarly situated: (1) a

declaratory judgment pursuant to 29 U.S.C. § 1132(a)(1)(B) finding that their

pension benefits were wrongfully calculated (Counts I and VI); (2) damages

pursuant to 29 U.S.C. § 1132(a)(1)(B) in the amount of those pension benefits

allegedly wrongly withheld based on alleged improper calculations (Counts II and

VII); (3) a finding that Defendants breached their fiduciary duties under ERISA

(Counts IV and VIII); and (4) attorney's fees plus prejudgment interest pursuant to

29 U.S.C. § 1132(g).  Plaintiff also seeks, pursuant to 29 U.S.C. § 1132(c), on her

behalf only, penalties for Defendants' alleged failure to provide her with

documents required to be provided to Plan participants.

On June 8, 2017, Defendants filed their Motion to Dismiss.  Defendants seek

dismissal of the Amended Complaint on the grounds that (1) it is an improper

shotgun pleading in violation of Rule 8(a) and Rule 10(b) of the Federal Rules of

Civil Procedure; (2) Plaintiff lacks any plausible document disclosure penalty

claim because she timely received all documents to which she was entitled under

ERISA; (3) Plaintiff failed to plead a plausible benefits claim under

Section 502(a)(1)(B) of ERISA, and she may not bring suit under Section

502(a)(3) because her benefits claim under Section 502(a)(1)(B), if successful,

provides her with complete relief; and (4) Plaintiff's breach of fiduciary duty claim is barred by the statute of limitations and statute of repose, and, in any event, the duty she alleges is not imposed by statute.  ([19.1]).[5]

## II.   DISCUSSION

### A.    Legal Standard

 On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences."  Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010). "'[U]nwarranted deductions of fact' are not admitted as true."  Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996)). The Court also is not required to accept conclusory allegations and legal conclusions as true.  See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (construing Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual

---

[5]     On June 22, 2017, Plaintiff filed her Motion for Oral Argument, requesting, pursuant to Local Rule 7.1E, N.D.Ga., an oral argument to further assist the Court in determining whether to grant or deny Defendants' Motion to Dismiss.

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Mere "labels and
conclusions" are insufficient. Twombly, 550 U.S. at 555. "A claim has facial
plausibility when the plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the misconduct alleged."
Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). This requires more than
the "mere possibility of misconduct." Am. Dental, 605 F.3d at 1290 (quoting
Iqbal, 556 U.S. at 679). The well-pled allegations must "nudge[] their claims
across the line from conceivable to plausible." Id. at 1289 (quoting Twombly, 550
U.S. at 570).

B.     Analysis

1.     Document Disclosure Penalty Claim

Plaintiff alleges that Defendants failed to provide her with documents she
claims were Plan documents required to be provided under ERISA.
([16] ¶¶ 142-51). Section 1024 of ERISA states that "[t]he administrator shall,
upon written request of any participant or beneficiary, furnish a copy of the latest
updated summary plan description, and the latest annual report, and terminal
report, the bargaining agreement, trust agreement, contract, or other instruments
under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Section

1132(c) provides the enforcement mechanism for this document requirement:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c).

Defendants assert that they promptly complied with Plaintiff's requests for Plan documents under ERISA—even though Plaintiff failed to meet the requirement to submit written requests for them. ([19.1] at 11-15). The Amended Complaint and exhibits show that when Plaintiff made her first request for documents,[6] Defendants, on February 17, 2012, provided Plaintiff with the current Plan, the then-current Summary Plan Description, a 1994 draft of the Summary Plan Description for the 1993 predecessor Galileo International plan, and a narrative with additional information. ([16] ¶ 34). Upon a further oral request, Defendants, within six days of the request, provided to Plaintiff, the "Administrative Worksheet and the benefit calculation contained therein (the

---

[6] This request apparently was made verbally during a telephone conference. ([16] ¶ 32).

computational formula in which was [sic] supposed to be drawn from the Legacy

Plan." ([16 ¶ 36).

Over the course of the next two years, Plaintiff made four written requests

for historical earnings statements, original documents, and underlying

computations for each annual earnings figure for the years 1987 to 1996.  Plaintiff,

on one occasion, even made the following demand:

> By five o'clock p.m. on Tuesday, August 28th, you will physically
> deliver to me, in hard copy (no emails with attachments or the like)
> ALL of the materials that I have previously requested.  Those will
> include every document, plus sworn statements from witnesses with
> personal knowledge explaining or supplying facts as to which
> testimony would be necessary, which you would present in court to
> prove conclusively the amount of Mrs. Williamson's pension.

([4.13] at 3; see also [16] ¶ 145).  Defendants, to accommodate these demands,

provided the requested additional back-up documentation always noting for

Plaintiff they had fully complied with the requirements under ERISA to provide

certain Plan documents and were providing the additional information to respond

Plaintiff's demands.  ([4.14]; [4.17]; [4.19]; [16] ¶¶ 42, 46, 48).  For example, six

days after Plaintiff's first written request, Defendants provided a computer printout

containing "some additional 'Pensionable Earnings History," "some computer

numbers concerning 'Total Benefit Service,'" and "a copy of a November 15,

1990, letter to Plaintiff from UAL, allegedly regarding the amount of pension

benefits she had accrued while a UAL employee."  ([4.14] at 2; see also [16] ¶ 42).

ERISA requires a pension plan administrator to provide certain specified

documents to its plan participants.  ERISA does not require a plan administrator to

provide each and every original document from a plan participant's employment

history that are demanded by a participant to be provided.  See, e.g., Ferree v. Life

Ins. Co. of N. Am., No. 1:05-CV-2266-WSD, 2006 WL 2025012, at *3-4 (N.D.

Ga. July 17, 2006) (rejecting the plaintiff's claim for document penalties based on

request for "[d]ocuments demonstrating compliance with the administrative

process or safeguards[,]" "[r]eports of consultants and reviewers[,]" and

"[d]ocuments that constitute a statement of policy or guidance with respect to the

plan.").  Section 1132(c), by its plain language, imposes a sanction for an

administrator's failure or refusal to provide information "which [the] administrator

is required by this subchapter to furnish to a participant or beneficiary."

29 U.S.C. § 1132(c).  The Section's phrase "by this subchapter" (i.e., ERISA)

applies only to an administrator's failure or refusal to provide the documents

identified in Section 1024, namely "the latest updated summary plan description,

and the latest annual report, any terminal report, the bargaining agreement, trust

agreement, contract, or other instruments under which the plan is established or

operated." <u>See</u> 29 U.S.C. § 1024(b)(4).  Section 1024 did not require Defendants to provide the historical, original documents underlying a pension benefit calculation that Plaintiff demanded be provided.

Plaintiff argues this Court should look to decisions from other courts to require Defendants to produce documents other than those identified in Section 1024 if the documents are relied on to determine a plan participant's current rights under a plan.  <u>See, e.g.</u> <u>Hartman v. Dana Holding Corp</u>, 978 F. Supp. 2d 957, 968 (N.D. Ind. 2013) ("The Seventh Circuit has nonetheless recognized that a plan participant would be entitled to outdated plan documents where a claims administrator expressly relied on such documents because, under those circumstances, the participant would need to have access to [the outdated documents] in order to understand what the claims administrator [was] doing and to effectively assert his rights under the plan.") (internal quotation marks omitted). <u>Hartman</u>, unsurprisingly, focuses on the requirement under ERISA to provide Plan documents.  Plaintiff does not cite any controlling law in the Eleventh Circuit that the documents she demanded were required to be produced to Plaintiff under § 1024(b)(4).  Here, Plaintiff does not allege that Plaintiff was denied any particular historical plan documents or Summary Plan Descriptions.  Plaintiff, instead, only broadly asserts in her Amended Complaint that she was not provided

with "relevant documents, including but not limited to Plan documents."

([16] ¶ 146). Her Amended Complaint, including documents attached to it, alleges that Plaintiff was given historical plans and Summary Plan Descriptions and various other records not required by ERISA because Defendants sought to assist Plaintiff in understanding the calculations supporting her monthly pension benefits. She acknowledges she was given: (i) the Summary Plan Description for the 1993 predecessor Galileo International Employees Pension Plan, which described the Benefit Service under the UAL Plan, (ii) an Early Retirement Letter with an attached Administrative Worksheet detailing Plaintiff's benefit calculation, (iii) a November 15, 1990 letter, from the Manager of Pension Plans at Covia explaining the transfer of benefit from the UAL Plan, (iv) a listing of Plaintiff's months of pension service under the UAL Plan when she transferred to Covia, and (v) a Pension Benefit Modeling Statement. (See, e.g., [4.8]; [4.11]; [4.14]).

On March 4, 2015, Defendants provided even further documentation, including a copy of the outdated versions of a Covia pension plan. ([16] at ¶ 93). That Plaintiff did not receive each and every original, historical record or value supporting her current benefits calculation does not support that she is entitled to statutory penalties here. The record clearly shows Defendants provided the documents required by ERISA and Defendants otherwise accommodated

Plaintiff's repeated requests for information to substantiate Plaintiff's monthly

pension benefit calculation, even though these documents were not required under

ERISA to be provided. Based on the Amended Complaint allegations, and the

reasonable inferences taken from them, Plaintiff fails to state a claim for statutory

penalties under 29 U.S.C. § 1132(c) for a violation of 29 U.S.C. § 1024(b)(4).

If Plaintiff now attempts to assert she is entitled to document penalties based

on some duty founded on something other than the requirements of ERISA, this

claim also fails. Plaintiff states (i) she "timely requested all documents relevant to

her claim," (ii) "the Plan documents were not all of the documents 'under which

the Plan is administered' pursuant to 29 U.S.C. § 1024(b)(4),"[7] and (iii) "the Plan

Administrator has refused to this day to produce all of the foregoing responsive

documents." ([16] ¶ 147). "The source of the [] Defendants' obligation to provide

Plaintiff copies of documents 'relevant' or 'pertinent' to her claim" simply is not

among ERISA's statutory requirements. Brucks v. Coca-Cola Co., 391 F. Supp.

---

[7] It is undisputed that Plaintiff was provided with the current Plan and
Summary Plan Description and additional underlying documentation from
previous plans. A review of the Amended Complaint and exhibits shows that
Plaintiff did not request any of the other documents required to be produced by the
statute. Even if, for example, she was not provided with a bargaining agreement or
trust agreement, that "failure" does not support that statutory document penalties
be imposed. Instead, Plaintiff requested documents outside those required by the
statutory language of 29 U.S.C. § 1024(b)(4). To the extent Plaintiff is now
seeking statutory document penalties for documents that she never requested, the
Court holds that she is not entitled to those penalties.

2d 1193, 1211 (N.D. Ga. 2005); <u>see also</u> 29 U.S.C. § 1024(b)(4).  Any obligation

to provide claims-related documents must arise under federal regulation.  <u>See</u>

29 C.F.R. § 2560.503-1(h)(2)(iii) (2001).[8]  This regulation does not provide for

strict liability for violation of the regulation and does not impose a per-diem fine.

<u>See id.</u> ("[A] claimant shall be provided, upon request and free of charge,

reasonable access to, and copies of, all documents, records, and other information

relevant to the claimant's claim for benefits.  Whether a document, record, or other

information is relevant to a claim for benefits shall be determined by reference to

paragraph (m)(8) of this section.").

      29 C.F.R. § 2560.503-1(m)(8), in relevant part, provides that "[a] document,

record, or other information shall be considered 'relevant' to a claimant's claim if

such document, record, or other information[:]

> (i) Was relied upon in making the benefit determination;
>
> (ii) Was submitted, considered, or generated in the course of making
> the benefit determination, without regard to whether such document,
> record, or other information was relied upon in making the benefit
> determination;

---

[8]     The controlling regulation here is the version amended as of July 9, 2001. The next amendment occurred in December 2016—well after Plaintiff submitted her Claim Letter seeking her additional, disputed pension benefits.  <u>See</u> 29 C.F.R. § 2560.503-1(h)(2)(iii) (2016).

(iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination . . . ."

The Committee Denial Letter, dated December 7, 2015, states that the Committee relied upon, in making Plaintiff's final benefits determination: (i) Plan documents; (ii) Summary Plan Descriptions; (iii) Covia Pension Asset Transfer File; (iv) Employment records reflecting hours of service; (v) Payroll records reflecting compensation; (vi) Benefit Calculation Worksheets; and (vii) Social Security Earnings. ([4.33] at 3). The record shows that Plaintiff was in fact provided these documents. (See supra 6-9).

Plaintiff, moreover, does not cite, and the Court is unaware of, any decision from the Eleventh Circuit addressing whether a failure to provide documents "relevant" to a claim for benefits under 29 C.F.R. § 2560.503-1(h)(2)(iii) constitutes a failure to provide information "required by this subchapter" under Section 1132(c). Two courts in this District have declined to award statutory penalties under 29 U.S.C. § 1132(c)(1) for a violation of one of the provisions of 29 C.F.R. § 29560.503-1. See, e.g., Brucks, 391 F. Supp. at 1211-12 ("In the absence of Eleventh Circuit authority on this issue, the Court declines to rewrite Section 1132(c) to authorize statutory penalties against an administrator for failure to provide documents other than those identified in the statute itself.");

Montgomery v. Metropolitan Life Ins. Co., 403 F. Supp. 2d 1261, 1266 (N.D. Ga. 2005) ("Without clear Eleventh Circuit precedent mandating the award of statutory penalties for a violation of the regulation in question, this court is unwilling to exercise any discretion it might have to award statutory penalties for a violation of 29 C.F.R. § 29560.503-1(h)(2)(iii)."). Plaintiff fails to state a claim for statutory penalties under 29 U.S.C. § 1132(c) based on the violations of 29 C.F.R. § 29560.503-1(h)(2)(iii) she alleged.

Plaintiff also alleges she is entitled to statutory penalties based on a violation of ERISA Section 209(a), 29 U.S.C. § 1059(a). This provision, however, imposes a duty on employers to maintain records on employees and to furnish to benefit plans the information needed for the plans' fulfillment of their reporting duties. 29 U.S.C. § 1059(a); see also Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 573 (1985). The provision does not entitle participants or beneficiaries to those records, and there is no private right of action to enforce Section 1059(a). Kifafi v. Hilton Hotels Retirement Plan, 616 F. Supp. 2d 7, 37 (D.D.C. 2009). Assuming Plaintiff seeks statutory penalties under 29 U.S.C. § 1059(a), Plaintiff fails to state a claim.

    2.    Benefits Claim Under Section 502(a)(1)(B) of ERISA

Plaintiff also asserts, on behalf of herself and others similarly situated to her, a claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), for additional pension benefits, either past or future, alleging that Defendants miscalculated her monthly pension benefit payment. ERISA § 502(a)(1)(B) provides: "A civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

ERISA does not specify standards for judicial review of a plan administrator's benefits determination. The Supreme Court, however, has articulated a judicial review framework, which the Eleventh Circuit has refined into a six-part test. Blankenship v. Metro. Life Ins. Co., 644 F.3d 1350, 1354 (11th Cir. 2011); see also Slakman v. Administrative Committee of Delta Air Lines, Inc., 660 F. App'x 878, 879-80 (11th Cir. 2016). The test requires:

1. Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

2. If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

3. If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable grounds" support it (hence, review his decision under the more deferential arbitrary and capricious standard).

4. If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

5. If there is no conflict, then end the inquiry and affirm the decision.

6. If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

Blankenship, 644 F.3d at 1355 (quotation omitted).[9]

The Court first conducts a *de novo* "review [of] the administrator's decision for correctness, based upon the evidence before the administrator at the time of its benefits decision." Slakman, 660 F. App'x at 881; see also Melech v. Life Ins. Co. of N. Am., 739 F.3d 663, 672 (11th Cir. 2014). Taking all

---

[9] The Court may, at the motion to dismiss stage, engage in this six-part test, and consider the Plan language as well as a Committee Denial Letter attached to a plaintiff's complaint. Doing so does not convert a motion to dismiss into one for summary judgment. That is, "[a] document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." Slakman, 660 F. App'x at 880-81 (finding that the district court did not err by engaging in the six-part test because it properly evaluated the plaintiff's factual allegations and accepted them as true in light of the pension plan language submitted as part of his complaint); see also Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). The documents the Court considers here are both central to Plaintiff's claim for wrongful denial of benefits and undisputed.

of Plaintiff's alleged facts as true, in light of the Plan language submitted as part of the Amended Complaint, the Court finds the Plan administrator's decision on Plaintiff's claim is not wrong.

Plaintiff appears to assert in her Amended Complaint that Defendants improperly denied her credit for, or otherwise miscalculated: (1) Plaintiff's first year of service (the "pre-age 25" amount); (2) Plaintiff's months of service in the UAL Plan; and (3) an offset in the amount payable to Plaintiff as an annuity purchased by UAL to cover accrued benefits under the UAL Plan. ([16] at 20-30).

Plaintiff is not entitled to credit for her first year of service. Section 3.01 of the Plan states:

> Each eligible Employee shall become a Participant in the Plan as of the later of January 1, 1997 or the first Entry Date coinciding with or next following the date they have:
>
> (a) attained age 21;
>
> (b) completed one (1) year of Service; and
>
> (c) Effective April 30, 2003, new participation in the Plan shall cease, and no person shall become a Participant. Notwithstanding the foregoing, effective as of January 1, 2008, a Former Worldspan Plan Participant whose accrued benefit in the Worldspan Plan was merged into this Plan on or about January 1, 2008, shall become a Participant in the Plan on January 1, 2008, but in no event shall such individual be entitled to any benefits under this Plan, except those benefits set forth in Appendix C.

([4.1] at 23).  Despite this language, Plaintiff alleges the 2009 Summary Plan Description contains the following provision: "If you were employed by United Airlines between the ages of 21 and 25, you will be credited with one month of Benefit Service for each month of employment with United Airlines that you completed between ages 21 and 25."  ([4.6] at 39).  The Committee, in its Denial Letter, stated that the Plan governs the pre-age 25 period determination, not the Summary Plan Description.  ([4.33] at 5).  The Committee also pointed out that the Summary Plan Description upon which Plaintiff relied included the same eligibility language[10] stated in the Plan also requiring completion of one year of service before being considered a Plan participant.  ([4.6] at 7).

---

[10]   You are only eligible to participate in this Merged Plan if you were a former Galileo Pension Plan Participant.  No employee of Galileo or any of its affiliated companies which had adopted the Galileo Pension Plan who had not become a Participant in the Galileo Pension Plan prior to April 30, 2003 will be a Participant in this Merged Plan.  You were eligible to participate in the Galileo Pension Plan if you:
- Were hired before April 30, 2003 by Galileo or any of its affiliated companies which had adopted the Galileo Pension Plan, and
- Had met the age and service requirements for the Galileo Pension Plan, meaning:
  - You were a Regular Full-Time Employee or a Regular Part-Time Employee of Galileo or any of its affiliated companies which had adopted the Galileo Pension Plan,
  - You had reached age 21, and
  - You had completed on Year of Service.

([4.6] at 7).

The Eleventh Circuit has held that, where a conflict arises between a pension plan and the Summary Plan Description, a plaintiff must prove reliance on the Summary Plan Description.  Heffner v. Blue Cross and Blue Shield Alabama, 443 F.3d 1330, 1343 (11th Cir. 2006); see also Branch v. G. Bernd Co., 955 F.2d 1574, 1579 (11th Cir. 1992).  Plaintiff has not made a claim that she either relied upon the Summary Plan Description, or that she even read the Summary Plan Description before she filed her claim.  The Court defers to the general eligibility language in the Plan, which plainly states that Plaintiff must reach age 21 *and* complete one year of service prior to being considered a Plan participant—the same requirement that is in the Summary Plan Description.  The Committee's decision was not *de novo* wrong.

Plaintiff next disputes the Committee's decision regarding whether she is entitled to additional "Months of Service" credit for her service with United Airlines, Inc. from November 1977 through June 30, 1988.  She argues she is entitled to credit for twelve additional months of service—apparently because she was not provided with "relevant source" documents substantiating why Defendants reduced her months of service credit.  ([16] ¶ 107).  Plaintiff argues that she should not be required to "just 'trust'" computer printouts provided by Defendants.  (Id.).

The Committee's Denial Letter states that, "[u]pon [Plaintiff's] transfer to

Covia from United Air Lines on July 8, 1988, [she] was credited with one hundred eighty-seven (187) months of participation service or 15.5833 years of participation, as reported by the administrator of the UA[L] [] Plan." ([4.33] at 5). The Denial Letter notes further that Plaintiff was provided with a Covia Pension Asset Transfer File reflecting her participation data as reported by the administrator of the UAL Plan. (Id. at 6). The Denial Letter concludes that Plaintiff's demand that Defendants "preserv[e] underlying 'source documents' for decades," such as W-2 Forms, is "unworkable and burdensome." (Id.).

Plaintiff's primary contention here focuses on Defendants' refusal to produce certain "relevant source documents." As discussed in Section II.B.1, above, Defendants' refusal to provide "relevant source documents" such as W-2 Forms, is not required by ERISA. The Committee states in the Denial Letter that the twelve-month reduction in Plaintiff's months of service while at United Airlines, Inc. was reported by the UAL Plan administrator when Plaintiff transferred to Covia in 1988, and that Plaintiff was notified of this information at that time. ([4.33] at 5-6). Plaintiff does not claim that she did not receive this information, nor why or how she believes the Committee improperly concluded that she is not entitled to the additional twelve months of service credit. For example, Plaintiff fails to point to a term or condition of the Plan suggesting that

the Committee failed to comply with that term or condition in calculating her

months of service at United Airlines, Inc.  Plaintiff simply disputes the

Committee's refusal to provide her with what she calls "relevant source

documents" so that she can substantiate the reduction.  Plaintiff does not advance

any substantive argument other than that she believes she is entitled to certain

documents that this Court has already held she is not entitled to receive—implying

that if she had the documents she could confirm her entitlement.  It is the Plan

administrator's duty to implement the Plan.  It did so here, and the Court finds that

the Committee's decision denying Plaintiff's document claim and her contention

the calculation may be inaccurate was not *de novo* wrong.

Finally, Plaintiff claims she is entitled to an additional amount of "Months of

Service" for her Covia employment.  Section 4.01 of the Plan is instructive.  It

states, in relevant part:

> Employees who were hired by the Employer from contiguous service
> with United Air Lines shall be credited with service as follows:
>
> (a) Participants in Prior Plans of December 31, 1992.  If such
>     Employee participated in the Prior Plan and remained an Employee
>     as of January 1, 1993, his service credits under this Plan as of
>     January 1, 1993 shall equal the service standing to his credit for
>     eligibility, vesting and benefit accrual purposes, respectively,
>     under the Prior Plan as of December 31, 1992.

([4.1] § 4.01).  Section 4.01 is modified by Section 6.04 of the Plan, which states:

> Any benefits payable under this Plan shall be reduced by any portion of the benefits payable under the UA[L] [] Plan to the extent that Months of Service and Final Average Compensation under this Plan are also used to determine such Participant's accrued benefit under the [UAL] [] Plan.

([4.1] § 6.04).

Plaintiff does not once refer to Section 6.04 in her Amended Complaint, and it appears that she asks the Court to consider only Section 4.01 in determining whether she is entitled to the additional credit. Plaintiff conclusorily states that the UAL annuity is irrelevant. ([16] ¶ 81). The Committee's Denial Letter states that the Plan provides that "the UA[L] [] Plan is recognized for determining the amount of [Plaintiff's] benefits under the Plan, but overlapping service is offset by the amount of [Plaintiff's] benefits payable under the UA[L] [] Plan." ([4.33] at 7). The Denial Letter further states that the Committee determined an "offset in the amount that is payable to [Plaintiff] under an annuity purchased by United Air Lines to cover accrued benefits as of July 1, 1985." (<u>Id.</u>). Considering the entirety of the Plan language, and Plaintiff's failure to allege support for a contrary interpretation, the Court cannot conclude that the Plan language is ambiguous or that the Plan language was unfairly or improperly applied. The Court holds that the Committee's decision was not *de novo* wrong.

The Court notes that Plaintiff's allegations challenging the Committee's denial of additional pension benefits are legally and factually deficient. Despite the Plan's plain language, Plaintiff advances only conclusory allegations and immaterial facts, which confuse her arguments. Plaintiff does not dispute the terms or language of the Plan. Plaintiff in fact admits, in her initial communications prior to filing her Claim Letter with the Committee, that TRBC "cited all of the sections necessary to reach the proper resolution of the question." ([16] ¶ 86). Plaintiff does not sufficiently allege why she believes the Committee's calculations or interpretations are wrong. Aside from alleging that the Committee's Denial Letter "totally ignored Plaintiff's alternate demand for additional documents contained in the Claim Letter," and that the Committee took additional time to respond to her appeal "without specifying the grounds," Plaintiff does not advance any facts or arguments to support that the Committee's decision was unreasonable, an abuse of discretion, or *de novo* wrong. Plaintiff's conclusory claim that that "[t]he foregoing violation was a *de novo* wrong and/or abuse of discretion" is not enough. ([16] ¶¶ 136, 140). Plaintiff focuses only on communications between herself and TRBC employee Jennifer Lansing-McGrath—communications that occurred before she filed her Claim Letter with the Committee for the additional, disputed benefits.

Considering the Amended Complaint and the attached exhibits, the Court does not conclude that the Plan administrator's decisions were *de novo* wrong. The Committee, as evidenced in its Denial Letter, reviewed a proper set of documents and correspondence to reach its conclusion. ([4.33] at 3-4). The Committee addressed each of Plaintiff's concerns, referred to those sections of the Plan controlling those concerns, and explained how those sections governed the ultimate calculation of Plaintiff's monthly pension benefit payment.

The Court, taking all of Plaintiff's assertions as true, reviewing the Plan language and the Committee's Denial Letter, end its inquiry here, and finds in favor of the Plan administrator. Melech, 739 F.3d at 672-73. Plaintiff has failed to assert a claim for wrongful denial of benefits under Section 502(a)(1)(B) of ERISA.

### 3. Breach of Fiduciary Claim

Plaintiff next asserts a claim for breach of fiduciary duties under 29 U.S.C. § 1132(a)(3). Plaintiff alleges that Defendants failed to warn Plaintiff that they were not maintaining records, or that she needed to maintain her own records, failed to maintain pertinent documents, and failed to provide documents in accordance with the language of the Plan. ([16] ¶¶ 152-156). Section 1132(a)(3) permits beneficiaries to bring suit "(A) to enjoin any act or practice which violates

any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." The Supreme Court has described § 502(a)(3) as a "safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." Varity Corp. v. Howe, 516 U.S. 489, 512 (1996); see also Cotton v. Massachusetts Mut. Life Ins. Co., 402 F.3d 1267, 1276 (11th Cir. 2005). The Eleventh Circuit has held that a plaintiff who has an "available" claim under another subsection of § 502(a) cannot proceed under § 502(a)(3), "and, moreover, that 'the availability of an adequate remedy under the law . . . does not mean, nor does it guarantee, an adjudication in one's favor.'" Id. (quoting Katz v. Comprehensive Plan of Group Insurance, 197 F.3d 1084, 1089 (11th Cir. 1999).

Here, Plaintiff has an "available" claim under § 502(a)(1)(b). That she has failed to allege a claim upon which relief may be granted under § 502(a)(1)(b) is irrelevant for purposes of determining whether she may also assert a claim pursuant to § 502(a)(3). Cotton, 402 F.3d at 1276 ("In other words, a plaintiff who can state a cognizable claim under either (a)(1)(b) or (a)(2) may not also rely on the (a)(3) 'safety net' even if he is ultimately unable to prevail under both (a)(1)(b) and (a)(2).").  Plaintiff has failed to state a claim for breach of fiduciary duty.

4. <u>Attorney's Fees under Section 1132(g)</u>

Section 1132(g) authorizes the Court, in its discretion, to award reasonable attorney's fees and costs in an ERISA action. 29 U.S.C. § 1132(g)(1). Having determined that Defendants' Motion to Dismiss is granted with respect to Plaintiff's other claims, the court finds that Defendants' Motion to Dismiss is also be granted as to her claim for attorney's fees.

## III. CONCLUSION[11]

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint [19] is **GRANTED**

**IT IS FURTHER ORDERED** that Plaintiff's Request for Oral Argument on her Response in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint [21] is **DENIED AS MOOT**.

---

[11] Plaintiff's Complaint is an impermissible "shotgun pleading" that fails to meet the requirements of Rule 8 of the Federal Rules of Civil Procedure, and dismissal is warranted on this basis alone. The sixty-two page Amended Complaint alleges 120 paragraphs of facts. All of the counts, except the count seeking statutory penalties for Defendants' alleged failure to produce certain documents, allege and incorporate the Amended Complaint's very large, general fact section. As a result, it is nearly impossible to determine which facts support which counts. <u>Anderson v. District Bd. of Trustees of Cent. Fla. Comm. College</u>, 77 F.3d 364, 366 (11th Cir. 1996) (dismissing the plaintiff's because it was "virtually impossible to know which allegations of fact . . . intended to support which claim[s] for relief."). The Court has, nonetheless, considered and decided Defendants' Motion to Dismiss.

**IT IS FURTHER ORDERED** that this action is **DISMISSED.**


**SO ORDERED** this 10th day of January, 2018.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE